## HIGGINS *v.* STATE.

[83 South. 245, In Banc.   No. 20979.]

1. CRIMINAL LAW. *Assignment of error without basis in the record not to be considered.*

   An assignment of error that the state was permitted to ask the wife of the defendant if she testified at the preliminary trial, and to make argument commenting on such failure cannot be considered on appeal where it does not appear in the record that such things were done.

2. HOMICIDE. *Submission of manslaughter.*

   Under the facts of this case as set out in its opinion the court held that the hypothesis of manslaughter was properly submitted to the jury, and a verdict of manslaughter was properly rendered.

3. HOMICIDE. *Instructions as to apparent danger.*

   In a case depending for defense on the appearance of danger where none actually exists in fact, but where the defendant must judge by appearances, an instruction conveying such a case should be given, but its refusal under the facts of this case was not reversible error.

Appeal from the circuit court of Simpson county.
HON. W. H. HUGHES, Judge.

Hines Higgins was convicted of manslaughter and appeals.

The facts are fully stated in the opinion of the court.

*R. C. Russell,* for appellant.

It is our contention that the lower court committed three fatal errors in the trial of appellant, viz: (1) Permitting counsel for the state to interrogate appellant's wife on cross-examination, if she testified in the preliminary trial when the case was heard on a writ of *habeas corpus* and why she did not testify at the preliminary hearing the things that she had testified

to at the final trial and also permitted counsel for the prosecution in their argument of the case before the jury, to say to the jury, that Mrs. Higgins did not testify at the preliminary hearing and because of that fact her testimony was of course unbelievable. (2) The refusal of the court to grant instruction No. 7 asked for by appellant which instruction is in the following words to wit; that the court instructs the jury that in passing upon guilt or innocence of the defendant you should not try him by the light of after-developed events, nor hold him to the same cool and correct judgment which you are able to form, situated as you are, but you should put yourself in his place and judge of his act by the facts and circumstances by which he was surrounded at the time of the killing. (3) In granting instruction No. — for the state to the effect that the jury might find the defendant guilty of manslaughter.

In presenting error No. 1 to the court we insist that the court committed a fatal error. It is to be observed that all the courts without a single exception, so far as we have been able to find, have held inviolate the sacred rule that a husband and wife are not competent witnesses against each other in the trial of a case of this character, and neither is the failure of a husband or wife to testify in behalf of each other in a trial of this kind a proper subject of inquiry upon cross-examination, or the comment of counsel to the jury. If the counsel could interrogate appellant's wife about her failure to testify at the preliminary hearing and to comment upon this fact in argument of the case to the jury, then if this case should, perchance, be reversed and sent back for a new trial and appellant's wife fail to testify at the new hearing, then what would prevent the Attorneys for the state from commenting upon the fact that she had testified on a previous trial and had not testified at this new hearing, this is exactly

what this court condemned in the case of: *Johnson* v. *The State,* 63 Miss. 313; *Byrd* v. *State,* 57 Miss. 243.

We next in order present error No. 2 which is based upon the court's refusal to grant instruction No. — asked by appellant and this was certainly a fatal error as this court has so announced in the case of: *Long* v. *State,* 52 Miss. 23; *Windham* v. *State,* 45 So. 861.

This court in reversing the Windham case expressly held that it was a reversible error to refuse an instruction which was *verbatim* with the one here complained of. This instruction is a settled principal of law in Mississippi and it is fatal error to refuse it. It could not be contended that this instruction did not apply to the facts proven in this case, because witness Hines Warren testified that decedent told him on Monday night before the killing Tuesday that he was going to put it to "Old Red" the next day and if he raised up he would knock him down with his shovel, and Mrs. Hines Higgins recognized decedent in her chimney corner a night or two before the killing with his gun and that on the morning of the killing, decedent raised the difficulty and admitted in that difficulty that he had been to a man's house a night or two before to kill him and would have done so but for his children and further decedent stated at about the time of the fatal blow that somebody had to put an end to appellant and it had as well be him, decedent, as anybody and appellant testified that decedent drew his shovel to strike him when he, appellant, struck the fatal blow and under this statement of facts this instruction was proper if it was ever proper to give this instruction in any case.

In discussing error No. 3, that is, the granting of the instruction for the state that the jury was authorized to find appellant guilty of manslaughter, suffice it to say, that this point has been fully covered by my associate counsel in his brief filed in this cause; but, it does seem from the testimony in this case, that there could not be

but two verdicts, one guilty of murder and the other not guilty on the ground of a justifiable homicide; in other words it was either murder or a justifiable homicide and we submit that the case ought to be reversed on either of the three errors pointed out in this brief.

*J. P. Edwards,* for appellant.

As to the first assignment of error, we wish to call the attention of the court to the language of the instruction given by the court to the state wherein is stated that "if the jury believe from the evidence beyond a reasonable doubt that defendant wilfully and feloniously struck and killed Virgil Hales, in the heat of passion, and at a time when he, the said Hines Higgins, was in no danger of losing his own life or of suffering some great bodily harm at the hands of said Virgil Hales, then it is your sworn duty to find the defendant guilty of manslaughter."

This instruction is, in our opinion, fatally defective in that it omits the idea of apparent danger. The court should have told the jury that defendant would be guilty of manslaughter if he wilfully and feloniously struck and killed the deceased at a time when he was in no real or apparent danger of losing his own life or of suffering some great bodily harm at the hands of deceased, that is if such instruction had been proper in such case as made from the evidence, but a careful reading of the record will clearly show that the defendant was either guilty of murder or was justifiable and therefore not guilty of any crime at all.

The testimony offered by the state, if believed by the jury, would, beyond question, convict the defendant of murder, and that offered by the defendant, if believed by the jury, would acquit him. There is no midway ground in this case as made by the evidence. From the testimony the defendant either struck and

killed Hales under such circumstances as makes a clear case of murder, or he acted in self-defense. The only eye-witness for the state testified that defendant and deceased had not spoken a word to each other within a period of ten or fifteen minutes before the fatal blow was struck, and that the defendant without excuse or justification raised his shovel and struck the fatal blow at a time when he, defendant, was in no danger at the hands of the deceased, at a time when the deceased was in a defenseless position, engaged at his work, shoveling dirt. The defendant testified that at the moment of the fatal blow, the deceased was attempting to strike him, the defendant, with a deadly weapon, a shovel, and that he struck wholly in self-defense. One or the other of these statements must be true and the other false as these are the only two theories offered in the case. There is no room for a manslaughter instruction under the facts as made by such evidence, but it is clearly a case of murder or justifiable homicide, and, therefore, the court erred in granting such instruction. The defendant had the right to have the jury pass upon his case in the light of such evidence and to have his acquittal, or suffer a conviction on the charge of murder, and not take the risk of a compromise of manslaughter at the hands of the jury who were doubtless misled by this instruction and induced to render this manslaughter verdict.

As to the second assignment of error we urge the same contention as above. It will be seen that the court tells the jury in the 1st instruction for the state that they may render a verdict of manslaughter against the defendant. We are perplexed to know from the evidence as shown by the record on what theory the court could be authorized to instruct the jury that they could convict the defendant of manslaughter.

It is true there had been a dispute, or rather a joke a short time before the killing in which the deceased had accused the defendant of some rather unbecoming

conduct, perhaps such as would amount to a crime, and that the defendant was rather angry with the deceased because of this, but it is clearly shown that all this chat had ceased at least ten or fifteen minutes before the fatal blow was struck, and that at the moment of the blow not a word had been spoken for such a length of time by either the deceased or the defendant. The state made this proof clear and simple, but for the contradictions of same as made by the defendant himself, and as to this particular point, he, defendant, testified that at the moment the fatal blow was given by him the deceased cursed him and at the same time was making an effort to strike him with a shovel. The difference in the theory of the state as made by the record, and the theory of the defendant, is that the killing was murder, if the testimony of the state is to be believed, and the theory of the defendant is to be believed, is that he acted wholly in self-defense. This is a case parallel with the case of *Rester* v. *State,* 70 So. 881, decided by this court and in which the court held in accordance with the theory above advanced, and reversed and remanded the case because of the identical instruction as given in the instant case. So, on the authority of the case above cited we submit that this case should be reversed and remanded.

*A. W. Dent,* Assistant Attorney-General, for the state.

Complaint is made that the court erred in giving a manslaughter instruction in the case at bar, and the case of *Rester* v. *The State,* 70 So. 881, is relied upon in support of this. We understand that in a trial for murder where the state's evidence, if believed, convicted defendant of murder, if anything and the defendant's testimony, if believed, established a clear case of self-defense, an instruction authorizing a verdict of manslaughter would be improper.

The facts in the case at bar, as the court will observe, are unlike the facts in the case of *Rester* v. *State, supra.*

In that case, bad blood existed between the defendant and the deceased and it appears that threats had been freely uttered by the deceased and communicated for a long time prior to the killing. "This bitter feeling had existed to the extent that about a month prior to the killing, the deceased, armed with a shot gun, waylayed appellant by stationing himself in a thick clump of what is known as "gall-berry" bushes, but his presence and position were discovered by the appellant who being also armed, threw his gun upon the deceased and, under the startling circumstances of this near tragedy, discussed his trouble with deceased and told him that if he, deceased, would promise to go about his business and make no further demonstration or attempt to take the life of appellant, he, appellant, would not kill him or give him any trouble."

No such bitter feeling is shown in the record to have existed between the appellant and the deceased in the case at bar. On the other hand, the record as a whole tends to show that they were friendly up until the very minute the fatal blow was struck by appellant, that took the life of the deceased.

We submit, therefore, that the giving of the instruction for manslaughter by the court in this case was proper and ought to have been given because the appellant's own testimony, that he struck the deceased in the heat of passion, was all occasioned by jokes.

The appellant called his wife as a witness in his behalf. After she had given her direct testimony she was turned over to counsel for the state for cross-examination, and among the questions asked appellant's wife, on cross-examination was if she did not testify at the preliminary hearing to the things that she testified at the final trial. The court, over the objections of the appellant, permitted this question to be answered. Ex-

ceptions were taken and this is the second assignment of error.

We submit that the rule is too well settled and that it is not necessary for the citation of authority to show that when a witness is put upon the stand. whether it be the accused or his wife, that they waive their right that the law gives them if they decline totestify.

The facts in the case of *Johnson* v. *State,* 63 Miss., are unlike the facts in the case at bar. In the *Johnson Case supra,* the appellant , Johnston, did not call his wife as a witness in his own behalf and this fact was commented on by counsel, which was objectionable. The court stated in that case, "Under our statute, it was the privilege of appellant to introduce his wife as a witness or not, as he might determine. He was not required by law to introduce her as a witness and the state could not have done so."

We submit that the court committed no error when it permitted counsel, on cross-examination, to ask the appellant's wife if she testified in the lower court, or at the preliminary trial. We fail to find in the record any special bill of exceptions with reference to what the counsel for the state said in their argument to the jury with reference to the testimony of Mrs. Higgins.

The next assignment of error upon which appellant relies for reversal of this case, is the court's action in refusing to give for the appellant the following instruction, which will be found on page 14 of the record: "The court instructs the jury for the defendant that in passing upon the guilt or innocence of the defendant, the jury should not try him by the light of after-developed events, nor hold him to the same cool and correct judgment which you are able to form sitting in the jury box as you are, but you should put yourselves in his place and judge of his acts by the facts and circumstances by which he was surrounded at the time of the difficulty."

And in support thereof, cites the *Long Case,* 52 So. 23, and the *Windham Case,* 45 So. 61.

The facts in the *Long Case* and in the *Windham Case, supra,* upon which this instruction was predicated, are entirely different from the facts in the case at bar. The court was very liberal in giving instructions both for the state and the defendant in the trial of the case at bar, as appears from the record, and we respectfully submit that it committed no error in refusing this instruction. If it was error, it was a harmless error because, from a careful reading of the record, it will be observed that this appellant received a fair and impartial trial.

We respectfully submit, therefore, that this case ought to be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Hines Higgins was indicted for murder of one Virgil Hales, and was convicted of manslaughter, and from said conviction appeals.

Three errors have been assigned by the appellant as reasons for reversal: First. In permitting counsel for the state to interrogate the appellant's wife on cross-examination as to whether she testified in the preliminary trial and why she did not testify at the preliminary trial as she did on the trial on the merits. Second. That the court erred in its refusal to grant instruction No. 7, reading as follows:

"The court instructs the jury for the defendant that in passing upon the guilt or innocence of the defendant, the jury should not try him by the light of after-developed events, nor hold him to the same cool and correct judgment which you are able to form sitting in the jury box as you are, but you should put yourselves in his place and judge of his acts by the facts and circumstances by which he was surrounded at the time of the difficulty."

Third.   That the court erred in giving the instruction for the state to the effect that the jury might find the defendant guilty of manslaughter.

It appears that the defendant and the deceased had married sisters, and that some little time before the difficulty which resulted in the killing some one had entered, or attempted to enter a room of a lady in the community, and the deceased charged that the defendant was the one who did this.   On the morning in question prior to the killing, a short while, the foreman over the appellant and the deceased came to where they were working, and inquired whether they were going into camp to draw their pay, it being a pay day. Hales remarked that he was not. Higgins remarked that he was going in, and the deceased jokingly said.

"If you are going I will go in ahead of you and tell all the ladies to lock the doors and bar the windows; that 'Old Red' is coming to town."

Appellant asked deceased not to joke him on that subject any further, and, according to the state's witness Hales, said, "All right; if you won't joke me, I won't joke you;" and that Higgins said, "Let's joke one another, but not about that;" and Hales said, "Every damn word I have said is true, and if you don't like it, you don't have to take it; somebody has got to do away with you, and it may as well be me as any one." According to the state's witnesses there was nothing further said for some ten minutes, when the appellant struck the deceased on the side of the head with the spade, remarking, "Now, damn you, talk," and left the place where they were working, going a few steps in a walk and then running.

The deceased was taken to the camp by the foreman in an auto, and the foreman said as he was going into the camp that he saw the appellant, and that he had changed his clothes and was going away from home, or in a direction away from home. The state's witness said

at the time Higgins struck the fatal blow that Hales was not doing anything to him, but was shoveling dirt, and the witness testified that the shovel used by the deceased in his work was lying inside the pit, with loose dirt in the shovel.

According to the appellant's story, when Hales said that what he said was true, and appellant need not take it if he did not like it, that somebody would have to put him out of the way, etc., the deceased raised his shovel to strike the appellant, and that the appellant struck in self-defense. It was also in evidence that Hales had previously joked the appellant about the matter in question, and had been advised not to further joke about the matter by mutual friends. It was also in evidence that at the time just preceding the difficulty, in the conversation above referred to, the deceased said:

"I took my gun to kill a man, but he had his child in his arms and another one around his knees, and I just did not have the heart to do it."

The wife of the appellant testified in his behalf, and testified that a few days before the difficulty the deceased came to her house and asked her if she had heard the report about the appellant trying to enter a lady's room, and she replied she knew nothing about it, and he proceeded to tell her about it and made some improper advances towards her, and that she told him she was going to tell her husband, and he said, "If you do, it will be the last time you ever will," or words to that effect, and she did tell her husband about his conduct; that on the night before the killing she stepped out to get a drink of water at her home, and saw some one standing by the window with a gun in his hand; that it was a starlight night, but she recognized the person as the deceased; that her husband was inside the house with the baby in his arms and another child playing around him; that she told her husband that she saw some one at

---

---

the window; and that they got a light and went, to see who it was, and could find no one.

The assignment of error that it was reversible error to permit the state to ask the wife if she testified at the preliminary trial, and to make argument commenting on such faiure, cannot be considered because it does not appear in the record that such things took place.

On the facts in evidence we think it was proper to submit the hypothesis of manslaughter to the jury and there was no error in the instructions on that subject. This is not a case of assassination where the only question to determine is whether the defendant is the guilty person, but under the circumstances as detailed by the witnesses the jury were authorized to find a verdict of manslaughter.

As to the refusal of instruction No. 7, above set out, asked by the defendant, we think there is no reversible error, because the law upon the subject was fully and fairly given, taking the instructions as a whole. In cases depending for defense on the appearance of danger, where none actually exists in fact, but where the defendant must judge by appearances, the instruction would be proper, and it might be reversible error to refuse to give it, but we do not think it reversible in the present case.

The judgment is accordingly affirmed.

*Affirmed.*